No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: United States' and Zellhart's Motions to Dismiss [DEs 61, 62]

## I.  INTRODUCTION

On December 19, 2023, Jeni Pearsons and Michael Storc ("Plaintiffs") filed the operative First Amended Complaint ("FAC") against the United States of America (the "Government") and FBI agents Lynne Zellhart, Kathryn Bailey Dress, Brent James, Walter Dix, Ryan Heaton, and Lesley Buchan. (ECF No. 44.) Plaintiffs allege numerous claims under federal and state law related to the FBI's alleged failure to return Plaintiffs' property seized during a criminal investigation. Presently before the Court are the Government's and Zellhart's separate Motions to Dismiss all claims. (ECF Nos. 61, 62.) For the following reasons, the Court **GRANTS in part** the Government's Motion and **GRANTS** Zellhart's Motion.

## II.  FACTUAL BACKGROUND

This case is yet another chapter in the long legal saga of the FBI's criminal investigation of U.S. Private Vaults ("USPV"), a now defunct business located in Beverly Hills that provided storage for valuable goods. Plaintiffs, former USPV customers, allege the following in the FAC:

Plaintiffs stored numerous valuable items in a safe deposit box at USPV, including approximately $20,000 in silver and $2,000 in cash. (FAC ¶ 2.) On March 22, 2021, pursuant to a warrant, the FBI searched USPV's business premises and seized various property, including Plaintiffs' safe deposit box. (*Id.* ¶¶ 2–3.) The FBI later returned Plaintiffs' silver but not their cash, which had seemingly "disappeared." (*Id.* ¶ 2.)

The targets of the FBI's search were USPV's steel structures, or "nests," that contained individual safe deposit boxes within them. (*Id.* ¶ 36.) In the warrant application, Zellhart specifically represented that the FBI "sought to seize 'the nests of boxes themselves, not their contents.'" (*Id.* ¶ 37 (emphasis in original).) Moreover, the warrant application "promised . . . that the FBI would 'preserve

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

. . . property'" held within safe deposit boxes "'for safekeeping' and return the property to the rightful owners." (*Id.* ¶ 3.) To keep the property safe, Zellhart further represented that the FBI would "follow . . . written inventory policies to 'protect [against] claims of theft or damage to the contents of the boxes.'" (*Id.* ¶ 39.) The magistrate judge granted the warrant application, but "specifically did not authorize a 'criminal search or seizure of the contents of the safety [sic] deposit boxes.'" (*Id.* ¶ 42.)

Notwithstanding her representations to the magistrate, Zellhart spearheaded "a separate plan—concealed from the magistrate judge who approved the warrant—to administratively forfeit all boxes containing property worth at least $5,000 (the FBI's minimum threshold for profitability), and to conduct investigatory searches of the boxes for evidence to support the forfeitures." (*Id.* ¶ 4.) Therefore, "[i]nstead of honoring its promises to safeguard the safe-deposit boxes and return the contents to the rightful owners, the government instead . . . [broke] into the safe-deposit boxes to look for property to forfeit and search[ed] for evidence to support the forfeitures." (*Id.* ¶ 56.) As part of that plan, Zellhart created "specialized one-time search procedures" that included the use of drug sniffing dogs, documenting "cash observations," and sending copies of paperwork to the asset forfeiture unit. (*Id.* ¶ 51.)

### III. JUDICIAL STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure ("Rule") 12(b)(1) where a court lacks subject matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). The Court begins with the principle that "[f]ederal courts are courts of limited jurisdiction" and presumptively lack jurisdiction over an action. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 US. 375, 377 (1994). The burden of demonstrating subject matter jurisdiction rests on the party asserting jurisdiction. *Id.*

Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff need not provide "detailed factual allegations" but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The Court must also "construe the pleadings in the light most favorable to the nonmoving party." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012). The Court, however, is "not bound to accept as true a

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## IV. DISCUSSION

Zellhart and the Government have separately filed Motions to Dismiss. The Court addresses each Motion in turn, beginning with Zellhart's.

### A. Zellhart's Motion to Dismiss

Plaintiffs assert three types of claims against Zellhart: (1) a claim for damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); (2) various state law claims; and (3) a Fifth Amendment due process claim. Zellhart argues that each of these claims should be dismissed. The Court discusses each claim in turn.

#### 1. Bivens Claim

Plaintiffs assert a claim for damages against Zellhart under *Bivens*. Zellhart argues that Plaintiffs' *Bivens* claim fails because it arises in a new context that has not been previously recognized. The Court agrees.

Federal law did not historically provide a cause of action for damages to those whose constitutional rights were violated by federal officials. *See Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). This was because neither Congress nor the Constitution explicitly provided such a cause of action. *Id.* at 130–31. This changed with the Supreme Court's decision in *Bivens*. In *Bivens*, Federal Bureau of Narcotics agents violated the Fourth Amendment when they arrested the plaintiff without a warrant, handcuffed him in front of his family, threatened to arrest his family, searched his apartment, and subjected him to a visual strip search. *See Bivens*, 403 U.S. at 389. Faced with such egregious conduct, the Supreme Court found that "even absent statutory authorization," courts could recognize "an implied cause of action" for certain constitutional violations. *Abbasi*, 582 U.S. at 131.

Since *Bivens*, the Supreme Court has recognized an implied cause of action for money damages against federal officers on only two occasions: (1) a due process violation under the Fifth Amendment based on workplace discrimination, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and (2) a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause based on failure to provide medical care to an inmate, *Carlson v. Green*, 446 U.S. 14, 17–19 (1980). Since 1980, the Court has recognized no new *Bivens* claims, chiefly due to separation-of-powers concerns; "[i]n most instances . . . the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 582 U.S. at 136.

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

In 2018, the Supreme Court made clear that judicial creation of new *Bivens* claims is a "disfavored judicial activity," and introduced a demanding two-step inquiry that courts must undertake before doing so. *Id.* at 135. First, a court must determine "whether the plaintiff is seeking a *Bivens* remedy in a new context." *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018). If so, then the court must ask whether "special factors counsel hesitation," such that a new *Bivens* remedy should not be implied. *Id.* The Court begins by assessing whether Plaintiffs' claim presents a new context.

    a.    *New Context*

*Bivens* claims are typically limited to the circumstances of *Bivens*, *Carlson*, and *Davis*, and a case presents a "new context" if it differs "in a meaningful way" from that "*Bivens* trilogy." *Abbasi*, 582 U.S. at 139. Virtually any other claim is a "new context" because "even a modest extension" of the original three *Bivens* cases "is still an extension." *Id.* at 147; *see also Ahmed v. Weyker*, 984 F.3d 564, 570 (8th Cir. 2020) ("If the test sounds strict, it is."). The Supreme Court has listed several non-exclusive factors that indicate a case might meaningfully differ from *Bivens*. Those factors include the "rank of the officers involved," the "constitutional right at issue," and the "generality or specificity of the official action." *Abbasi*, 582 U.S. at 139–40. After *Abbasi*, courts have also considered the type of injury suffered, along with "the mechanism of injury[] and the kinds of proof those injuries would require." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2020).

Plaintiffs allege that Zellhart violated their Fourth Amendment rights when she applied for a search warrant without disclosing to the magistrate judge that she had created special procedures for searching, seizing, and forfeiting the contents of USPV boxes that exceeded the scope of the warrant. (FAC ¶¶ 190–194.) Using the "meaningful difference" factors laid out above, the Court determines that Plaintiffs' allegations reveal two meaningful differences that demonstrate a new *Bivens* context.[1]

First, the alleged injury differs from *Bivens*. *Bivens* involved federal agents operating without a warrant, who handcuffed and strip-searched the plaintiff while they searched his apartment, resulting in plaintiff's "humiliation, embarrassment, and mental suffering." *Bivens*, 403 U.S. at 389–90. Here, Plaintiffs allege, at most, indirect involvement by Zellhart in simply applying for a warrant and creating search procedures that resulted in Plaintiffs' loss of property. Specifically, Plaintiffs allege that Zellhart made misrepresentations to the magistrate to obtain the warrant, while other agents performed the actual search that led to the property seizure. Other circuits have found similar cases involving allegations that a defendant made misrepresentations in a warrant application to be meaningfully different from *Bivens* and its straightforward warrantless search. *See, e.g., Annappareddy v. Pascale*, 996 F.3d 120, 135–36 (4th Cir. 2021) (finding that a search pursuant to a warrant presented different legal questions than the warrantless search in *Bivens*, and therefore presented a new context); *Ahmed*, 984 F.3d at 568 (finding a

---

[1] Because Plaintiffs challenge a Fourth Amendment violation, the Court compares the allegations of this case to *Bivens*, as the only member of the "*Bivens* trilogy" that involved Fourth Amendment search and seizure violations.

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | ***Jeni Pearsons et al. v. United States et al.*** | | |

new context where defendants did not themselves enter plaintiffs' home but provided allegedly false information resulting in their arrest). Plaintiffs also do not allege that they suffered emotional injuries to the extent of the *Bivens* plaintiff, further widening the gap between the two cases.

Second, the type of evidence necessary to prove Plaintiffs' case differs from *Bivens*. *Bivens* required only an inquiry into the actions of arresting officers. Meanwhile, Plaintiffs challenge the propriety of Zellhart's warrant application and special search procedures, requiring the Court to delve "into evidence before numerous decisionmakers," including the agents themselves and the magistrate judge. *Farah*, 926 F.3d at 499. In this manner, Plaintiffs' claim requires "fact-checking and conscience-probing" that poses a great "risk of intruding on the investigatory and prosecutorial functions of the executive branch." *Ahmed*, 984 F.3d at 569; *Annappareddy*, 966 F.3d at 136.

For these reasons, the Court concludes that Plaintiffs' claim presents meaningful differences from the claim in *Bivens*, and thus presents a new context for the doctrine. The Court next determines whether special factors counsel hesitation in creating a new *Bivens* claim.

     b.  *Special Factors*

The focus of the "special factors" inquiry is "whether the judiciary is well-suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at 136. The threshold for whether a factor "counsels hesitation" is "remarkably low." *Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020). Courts have considered many special factors, including: (1) the existence of an alternative remedial structure; (2) the level of intrusion into the functions of the executive branch required; and (3) whether a plaintiff is seeking to improperly challenge policy via its damages action. *See Abbasi*, 582 U.S. at 140–46. On balance, these factors counsel hesitation here.

First, there are alternative remedial structures. Plaintiffs seek $2,000 in damages to compensate the $2,000 in cash that was seized and never returned. As explained below, Plaintiffs may pursue those claims against the Government via the FTCA and Little Tucker Act. The existence of these alternative remedial structures weighs against extending *Bivens*. *Id.* at 122.

Second, allowing the *Bivens* claim to proceed would "require [the Court] to interfere in an intrusive way with sensitive functions of the Executive Branch." *Id.* at 141. By alleging that Zellhart knowingly made material misstatements to obtain the search warrant and created special search procedures that went beyond the scope of the warrant, Plaintiffs seek discovery into her knowledge and state of mind. *Ahmed*, 984 F.3d at 570. Litigation of these issues would be costly and burdensome, resulting in "'the diversion' of public resources and deterring 'able citizens from . . . public office.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)); *Cantú*, 933 F.3d 414, 424 (5th Cir. 2019). Thus, this factor also weighs against extending *Bivens*.

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

However, it does not appear that Plaintiffs seek to improperly challenge FBI policy. Nowhere in their FAC or briefing do Plaintiffs take issue with FBI policy. Rather, they challenge Zellhart's actions alone, arguing that Zellhart deviated from FBI policy. In this manner, Plaintiffs are not using their *Bivens* claim as a "vehicle for altering [FBI] policy," but merely to seek relief from Zellhart's individual actions. *Abassi*, 582 U.S. at 140–41. Accordingly, this factor weighs in favor of extending *Bivens*.

On balance, the Court finds that these factors, though not unanimous, counsel hesitation against extending *Bivens* to Plaintiffs' claim. Having found both that Plaintiffs' claim arises under a new context and that the special factors counsel against extending *Bivens*, the Court **DISMISSES** Plaintiffs' *Bivens* claim.[2]

  2. *State Law Claims*

Plaintiffs assert several state law claims against Zellhart. Zellhart argues that these claims should be dismissed because they are preempted by the Westfall Act, 28 U.S.C. § 2679, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, *et seq.* Plaintiffs argue that their state law claims fall within an exception for actions brought for violations of Constitutional rights. The Court agrees with Zellhart.

Under the Westfall Act, the FTCA provides the exclusive remedy for injury or loss of property resulting from the negligent or wrongful act or omission by an employee of the United States acting within the scope of her office or employment. 28 U.S.C. § 2679(b)(1). Under the FTCA, the employee defendant must be substituted by the Government, effectively extinguishing any claims against the employee directly. *See id.* § 2679(d)(1). There are two exceptions to the Westfall Act, however. The Westfall Act does not apply to a civil action "(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." *Id.* § 2679(b)(2)(A)–(B).

Here, Plaintiffs' state law claims against Zellhart each seek damages based on their alleged loss of property resulting from Zellhart's actions within the scope of her employment.[3] Accordingly, the Westfall Act and the FTCA would seem to apply. However, Plaintiffs argue that the exception set forth in § 2679(b)(2)(A) applies because Plaintiffs' state law claims are premised on violations of Plaintiffs' Fourth Amendment rights. While the language of § 2679(b)(2)(A) broadly suggests that any action brought for Constitutional violations may escape the FTCA's exclusivity, Supreme Court authority

---

[2] In her Motion, Zellhart alternatively argues that, even if Plaintiffs' *Bivens* claim could proceed, it would still fail because Zellhart is shielded by qualified immunity and the statute of limitations has lapsed. Because the Court dismisses the *Bivens* claim, the Court need not decide these issues.
[3] On January 16, 2024, the same day that Defendants filed their Motions to Dismiss, Zellhart filed a Notice of Substitution, substituting herself with the Government. This Notice also included a certification that she was working within the scope of her employment. (Notice of Substitution, ECF No. 60.)

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

suggests otherwise. In *United States v. Smith*, the Supreme Court explained that this provision applies only to "a *Bivens* action[] seeking damages for a constitutional violation by a Government employee." 499 U.S. 160, 167 (1991). The Supreme Court further warned against expanding these exceptions, noting that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Id.* (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980)). Accordingly, at least one district court has rejected attempts to bring state law claims under this exception, finding it contrary to the Supreme Court's interpretation in *Smith*. *Quiñonez v. United States*, 2023 WL 5663156, at *3 (N.D. Cal. Aug. 30, 2023) (rejecting a plaintiff's claim under California's Bane Act for violation of civil rights because "[a] Bane Act claim is neither a *Bivens* action nor an action brought under a federal statute, and thus would be futile under *Smith*.").

Nonetheless, Plaintiffs cite to a concurrence in a D.C. Circuit opinion, *Buchanan v. Barr*, which they argue suggests a broader interpretation of § 2679(b)(2)(A). 71 F.4th 1003, 1016 (D.C. Cir. 2023) (Walker, J., concurring). In *Buchanan*, the D.C. Circuit affirmed the dismissal of several *Bivens* claims. *Id.* at 1006. In a concurrence, Judge Walker suggested that if the plaintiffs filed state tort claims for constitutional injuries (which they did not), those claims theoretically could have survived under § 2679(b)(2)(A) as claims "brought for a violation of the Constitution." *Id.* at 1017–18. There are several flaws in Plaintiffs' reliance on this concurrence, however. First, a D.C. Circuit concurrence is of very little weight here, in the Ninth Circuit. Indeed, it appears that this case would be of little weight even within the D.C. Circuit because the concurrence is almost entirely dicta; Judge Walker recognized that the applicability of § 2679(b)(2)(A) to state claims was not an issue because "the protesters did not file those claims in this case." *Id.* at 1017–18. Second, Judge Walker did not even conclude that § 2679(b)(2)(A) allows state law claims premised on Constitutional violations. Rather, he admitted: "I'm not certain whether the Westfall Act is best read to allow state tort suits for constitutional injuries. . . . I hope the Act gets close attention in an appropriate case." *Id.* at 1017. For these reasons, the Court declines Plaintiffs' invitation to rely on *Buchanan*.

Accordingly, the Court finds that the Westfall Act and the FTCA apply, thus Zellhart properly substituted herself with the Government as defendant for each of the state law claims. Because Zellhart is no longer the defendant to these claims, the Court **DISMISSES** the state law claims as to her.

   3.   *Due Process Claim*

Plaintiffs also assert a claim against Zellhart under the Fifth Amendment's Due Process Clause. Plaintiffs contend that if Zellhart and the Government succeed in dismissing Plaintiffs' other claims, Zellhart and the Government will have violated their due process by eliminating all remedies for the deprivation of their property. There are multiple issues with this claim, however. First, it does not appear to be a cognizable claim. Plaintiffs appear to concede this. Second, the specific form of relief sought is not entirely clear. And third, while the Court finds that no claims may be brought against Zellhart, as

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

discussed below, the Court finds that Plaintiffs may have valid claims against the Government, thereby assuaging Plaintiffs' due process concerns. For these reasons, the Court **DISMISSES** Plaintiffs' due process claim as to Zellhart.

Having dismissed each of the claims against Zellhart, the Court accordingly **GRANTS** the Motion and **DISMISSES** Zellhart from this action altogether.

**B.    The Government's Motion**

As sovereign, the Government is immune from suit unless it "unequivocally express[es]" its consent to be sued. *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Without a waiver of sovereign immunity, a court lacks jurisdiction over claims against the federal government. *Id.* One such waiver is the Tucker Act, which allows plaintiffs to sue the Government for certain specified actions not sounding in tort, including claims for constitutional violations and breach of contract. 28 U.S.C. § 1491(a)(1). The Court of Federal Claims has jurisdiction over Tucker Act claims exceeding $10,000 in value. *Id.* District courts have original jurisdiction over claims valued at $10,000 or less pursuant to the Little Tucker Act. 28 U.S.C. § 1346(a). Another waiver is the FTCA, which allows plaintiffs to sue the Government for tortious injuries or losses suffered because of "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or his employment." 28 U.S.C. § 1346(b)(1).

Plaintiffs asserts numerous claims against the Government, including two claims under the Little Tucker Act and three claims under the FTCA. As an alternative basis for relief, Plaintiffs assert a claim under the Fifth Amendment's Due Process Clause, arguing that if there are no remedies available under either the Little Tucker Act or FTCA, they have been deprived of property without due process of law. Finally, as discussed above, Zellhart properly substituted herself with the Government in the state law claims asserted against her. The Court discusses each category of claims in turn, beginning with the claims asserted under the Little Tucker Act.

1.    *Little Tucker Act Claims*

Plaintiffs assert two claims under the Little Tucker Act: (1) a violation of the Fifth Amendment's Takings Clause and (2) breach of an implied-in-fact bailment contract. The Court addresses each in turn.

a.    *Unconstitutional Takings Claim*

The Fifth Amendment's Takings Clause guarantees that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Government argues that Plaintiffs' Takings Clause claim fails because Plaintiffs' property was seized by law enforcement pursuant to the FBI's police powers, and therefore was not "taken for public use." *Id.* The Federal Circuit has

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

"consistently held that the government is not liable under the takings clause for property seiz[ed] during a criminal investigation or for damage to such property in its custody, even if the decrease in value renders the property essentially worthless." *Jenkins v. United States*, 71 F.4th 1367, 1373 (Fed. Cir. 2023).

Plaintiffs apparently concede that the seizure of property for law enforcement purposes is not a compensable taking. Plaintiffs argue, however, that numerous courts have suggested that police power does not "immunize[] the government from liability for failing to return property legally seized after the government's need to retain the property ends." *Id.*; *see also Frein v. Penn. State Police*, 47 F.4th 247, 251 (3d Cir. 2022) (reasoning that the plaintiffs had "correctly charge[d] the government with taking their 'private property . . . for public use, without just compensation'" after their property was seized by law enforcement and not returned after the criminal case concluded) (quoting U.S. Const. amend. V) (ellipsis in original).

Here, Plaintiffs allege that the FBI seized their property and never returned it. Moreover, Plaintiffs allege that the FBI has no apparent need for the property. *See Jenkins*, 71 F.4th at 1373 (reasoning that "once criminal proceedings have concluded, the government needs some justification to retain the property without compensation.") (citing *Frein*, 47 F.4th at 252–53) (internal quotation marks omitted). For these reasons, Plaintiffs have pleaded a plausible Takings Clause claim, and the Court **DENIES** the Motion with respect to this claim.

              b.      *Breach of Bailment Contract*

Plaintiffs contend that the Government breached an implied-in-fact bailment contract when it failed to return the $2,000 of cash seized from their safe deposit box. The Government argues that this claim fails because Plaintiffs did not voluntarily deliver their property to the FBI, and therefore, did not enter into a bailment agreement.[4] In support of this proposition, the Government cites numerous cases in which courts declined to find that government seizures gave rise to implied-in-fact bailment contracts. In one of those cases, the Federal Circuit[5] reasoned, in part, that dismissal of a breach of bailment contract claim was appropriate because the plaintiff "did not voluntarily deliver his equipment" to the government. *Kam-Almaz v. United States*, 682 F.3d 1364, 1369 (Fed. Cir. 2012). The court further reasoned that "a seizure pursuant to the government's [police powers] generally will not give rise to an implied-in-fact bailment contract because "[a] seizure, essentially by definition, lacks mutual intent." *Id.*

---

[4] For the first time in its Reply, the Government argues that FBI agents are unable to bind the Government to contractual obligations. The Court declines to consider this argument. *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006) ("Issues raised for the first time in . . . [a] reply brief are generally deemed waived.").
[5] The Federal Circuit has exclusive jurisdiction over appeals of claims brought under the Little Tucker Act. 28 U.S.C. § 1295. Therefore, the Federal Circuit's authority with respect to these claims is binding on this Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

However, the Federal Circuit did not completely foreclose the possibility that the involuntary seizure of property might form the basis of an implied-in-fact bailment contract. Indeed, the court found it "unnecessary to opine whether under some hypothetical set of alleged facts an implied-in-fact bailment contract could conceivably arise from the detainment of property" by a federal agency. *Id.* at 1370. Rather, it "merely h[e]ld [that] on the specific facts alleged . . . [the plaintiff's] complaint fail[ed] to state a claim for an implied-in-fact bailment contract." *Id.* In fact, the Supreme Court suggested that a plaintiff whose property has been seized may sue the Government under just such a theory. In *Kosak v. United States*, the United States Customs Service "*seized* various antiques and other objects of art" from the plaintiff. 465 U.S. 848, 849 (1984) (emphasis added). The Supreme Court affirmed the district court's dismissal of the plaintiff's FTCA claims. *Id.* at 851. The Court reasoned, however, that a person "in [the plaintiff's] position" had another potential remedial avenue: a breach of an implied-in-fact contract of bailment between himself and the federal government. *Id.* at 860 n.22.

The Court's reasoning in *Kosak* clearly belies the Government's proposition that Plaintiffs do not have an implied-in-fact bailment contract with the FBI simply because they did not voluntarily deliver the property in question. Accordingly, the Court **DENIES** the Motion with respect to Plaintiffs' bailment claim.

    2.    *FTCA Claims*

Plaintiffs assert claims under the FTCA for: (1) breach of bailment; (2) conversion and trespass to chattels; and (3) negligence. As with the breach of bailment contract claim, the Government argues that Plaintiffs' breach of bailment tort claim should be dismissed because Plaintiffs did not voluntarily deliver their property to the FBI. For the reasons described above, this argument is unpersuasive.

Additionally, the Government argues that the Court lacks subject matter jurisdiction over the FTCA claims because the FTCA bars Plaintiffs from bringing claims related to "the detention of any goods, merchandise, or other property by any . . . law enforcement officer" unless the following four criteria are satisfied:

> (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> (2) the interest of the claimant was not forfeited;
>
> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

(4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680(c)(1)–(4). The Ninth Circuit has held that property satisfies the first requirement only if it was "seized *solely* for the purpose of forfeiture." *Foster v. United States*, 522 F.3d 1071, 1075 (9th Cir. 2008) (emphasis added). In other words, property seized by law enforcement for investigatory purposes and later subjected to forfeiture proceedings does not meet this requirement. *Id.* at 1079.

Here, the parties do not meaningfully dispute that Plaintiffs' claims involve goods detained by law enforcement. Instead, the parties disagree regarding whether Plaintiffs have alleged that the property was seized solely for the purpose of forfeiture. Plaintiffs argue that they have made exactly this allegation, since they allege that the FBI seized only the nests for law enforcement purposes, then subsequently searched the individual boxes contained within the nests for contents sufficiently valuable to be forfeitable. The Government contends that Plaintiffs have alleged that the FBI seized the property at issue for both investigatory and forfeiture purposes.

The Government's argument is unavailing. Plaintiffs specifically allege that the FBI's warrant application "sought to seize 'the nests of boxes themselves, not their contents.'" (FAC ¶ 37 (emphasis in original).) Moreover, Plaintiffs allege that the FBI planned to "administratively forfeit all boxes containing property worth at least $5,000 (the FBI's minimum threshold for profitability), and to conduct investigatory searches of the boxes for evidence to support the forfeitures." (*Id.* ¶ 4.) These statements allege that Plaintiffs' property was not seized for any purpose other than "for the purpose of forfeiture." 28 U.S.C. § 2680(c)(1).

The Government make no additional arguments for dismissal of the FTCA claims. Accordingly, the Court **DENIES** the Motion with respect to those claims.

      3.    <u>*Due Process Claim*</u>

Plaintiffs also assert a claim against the Government under the Fifth Amendment's Due Process Clause. As discussed above, however, this claim fails because it is not a cognizable claim, the form of relief sought is unclear, and Plaintiffs have other potentially viable claims against the Government. Accordingly, the Court **DISMISSES** the due process claim.

      4.    <u>*State Law Claims*</u>

As discussed above, the Government has been properly substituted as the defendant in the state law claims asserted against Zellhart. Plaintiffs apparently concede that these claims cannot proceed against the Government, since the FTCA and Little Tucker Acts are the appropriate remedial avenues

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7952-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Jeni Pearsons et al. v. United States et al.* | | |

for claims against the sovereign. Accordingly, the Court **DISMISSES** the state law claims asserted against Zellhart.

**V.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Zellhart's Motion and **DISMISSES** her from this action. In addition, the Court **GRANTS in part** the Government's Motion and **DISMISSES** the due process claim and state law claims for which it has been substituted as defendant. The Court **DENIES** the Motion with respect to Plaintiffs' claims under the FTCA and Little Tucker Act.

**IT IS SO ORDERED.**

|  |  :  |
|---|---|
| Initials of Preparer | JRE/ak |